**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ZARA D. TARPLEY,

      Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant-Appellee.

No. 14-1110
(D.C. No. 1:12-CV-03242-WJM)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **GORSUCH**, and **MORITZ**, Circuit Judges.

Zara Tarpley applied for disability benefits claiming she couldn't work due to

back, knee, and wrist pain, fibromyalgia, and depression. At step four of the five-

step sequential evaluation process followed in these cases, an administrative law

judge determined that Ms. Tarpley retained the residual functional capacity for light

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

work, including her past jobs as cashier and fast-food worker. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step process). In the alternative, the ALJ found at step five that Ms. Tarpley's residual functional capacity permitted her to perform a number of other jobs that exist in significant numbers in the national economy. After the ALJ denied her claim, the Appeals Council and the district court affirmed in turn. The district court found that the ALJ erred at step four because Ms. Tarpley didn't have a strong record of past work as a cashier or fast-food worker, but it agreed with the ALJ's step-five ruling that Ms. Tarpley could perform several jobs that exist in significant numbers. It is this ruling Ms. Tarpley now challenges.

The ALJ took evidence from Ms. Tarpley's treating physicians, Dr. Christopher Smith and Dr. Dexter Koons. Dr. Smith explained his view that Ms. Tarpley could lift and carry twenty pounds; could sit for four hours and stand for four hours in a workday; and could rarely stoop, squat, crawl, or kneel. Dr. Koons stated his judgment that Ms. Tarpley could lift and carry ten pounds; sit for thirty minutes at a time and four hours total; stand for twenty minutes at a time and two hours total; and that she should never stoop, squat, crawl, or kneel.

The ALJ discussed all the medical records produced by Dr. Smith and Dr. Koons and concluded that none supported the severity of the impairments they found. The ALJ gave no weight to Dr. Smith's opinion because it was "not supported by the records in evidence as a whole" or "Dr. Smith's own clinical records." The ALJ also

afforded no weight to Dr. Koons's opinion because "Dr. Koons'[s] own records do not support the level of severity he alleges." Instead, the ALJ afforded significant weight to the opinion of Dr. Ian Happer, an agency physician. In Dr. Happer's opinion, Ms. Tarpley could lift twenty pounds occasionally and ten pounds frequently; could sit for six hours or stand for six hours in a workday; should never climb ladders, ropes, or scaffolds; could occasionally stoop, crouch, and climb ramps and stairs; could frequently balance, kneel, and crawl; and should avoid concentrated exposure to extreme cold. The ALJ explained his judgment that Dr. Happer's opinion was "well supported" by the medical records.

Ms. Tarpley argues that the ALJ erred in rejecting her treating physicians' views. But we must affirm an ALJ's decision if substantial evidence — "more than a scintilla, but less than a preponderance" — exists to support it. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). And that much exists here. As to her back impairments, the lack of relevant medical evidence to support a treating physician's opinion is among the factors an ALJ is expressly permitted to consider when assessing a medical opinion. *See* 20 C.F.R. § 416.927(c)(3). Likewise, although the existence or severity of fibromyalgia may not be determinable by objective medical tests, this court has suggested that the physical limitations imposed by the condition's symptoms can be objectively analyzed. *See, e.g.*, *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 627 n.1 (10th Cir. 2003); *see also Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 17 n.5 (1st Cir. 2003). And, as the ALJ found, very little in Dr.

Smith's or Dr. Koons's medical records suggests that Ms. Tarpley is as disabled as either Dr. Smith or Dr. Koons claimed. To the contrary, examination records suggest that Ms. Tarpley enjoys a full range of motion in her joints, possesses normal strength, and walks and moves without much difficulty. Other evidence in the medical records suggests that Ms. Tarpley has been able to care for her personal needs, do household chores, and go shopping. The ALJ, moreover, noted evidence showing that medication alleviates Ms. Tarpley's symptoms to a great degree, that Dr. Koons has encouraged her to remain active, and that Ms. Tarpley indeed stays active with friends and family. We do not question that a factfinder may have decided differently than the ALJ did about the weight her treating physicians' opinions deserve. But neither can we say that the ALJ wanted for substantial evidence to support the judgment he did reach.

Ms. Tarpley suggests that the ALJ committed a separate error in failing to state explicitly whether or not he intended to give controlling weight to her physicians' opinions before proceeding to find that they were entitled to no weight. But any imaginable oversight on this score is clearly harmless because the ALJ's ruling unambiguously demonstrates that he declined to give the opinions controlling weight and, as we've explained, he had substantial evidence to support that decision. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005). Ms. Tarpley's citation to *Krauser v. Astrue*, 638 F.3d 1324 (10th Cir. 2011), doesn't compel a different result. That case involved an ALJ who determined that a treating

physician's opinion was not entitled to controlling weight but then neglected to decide whether it was entitled to at least some weight. *See id.* at 1330-31. Here the situation is reversed — the ALJ didn't expressly say he wasn't affording the opinions controlling weight but did adequately explain why they were entitled to no weight and did so in a manner entitled to our deference.

Finally, Ms. Tarpley argues that the ALJ erred in affording significant weight to the opinion of a nontreating agency physician, Dr. Happer, because he didn't review later opinions issued by Dr. Smith or Dr. Koons or subsequent medical records. The governing and unchallenged regulation states that the weight an ALJ may give to the opinions of nonexamining sources "depend[s] on the degree to which they provide supporting explanations for their opinions," and that an ALJ should "evaluate the degree to which these opinions consider all of the pertinent evidence in [a] claim, including opinions of treating and other examining sources." 20 C.F.R. § 416.927(c)(3). In our case, the ALJ found that Dr. Happer's opinion was "well supported by the evidence of record." Indeed, Dr. Happer's view jibed with records showing that Ms. Tarpley has full range of motion in all joints and in her spine, can walk without difficulty, and has full use of her extremities. The evidence Dr. Happer discussed in his assessment, moreover, included Dr. Koons's examination notes, Dr. Smith's diagnosis and prescription, and the results of a consulting examination by another agency physician. As the ALJ thoroughly reviewed, too, nothing in the later medical records Ms. Tarpley cites supports the disabling limitations found by Dr.

Smith and Dr. Koons or a material change in Ms. Tarpley's condition that would render Dr. Happer's opinion stale. In fact, records after Dr. Happer's review show that Ms. Tarpley continued to remain active with her friends and family, successfully treat her pain with medication, and have normal physical and mental examinations. Again, we can imagine a factfinder reaching a different view about how much weight to give Dr. Happer's assessment, but on this record we cannot say this factfinder lacked for evidence in reaching the decision he did.

Affirmed.

Entered for the Court


Neil M. Gorsuch
Circuit Judge